ACCEPTED
03-14-00702-CR
4934719
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/17/2015 1:43:27 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00702-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF
TEXAS AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/17/2015 1:43:27 PM
JEFFREY D. KYLE
Clerk

********

# ANTONIOUS DESMOND BRINSON

## VS.

# THE STATE OF TEXAS
********

ON APPEAL FROM THE 264th DISTRICT COURT
OF BELL COUNTY, TEXAS
Cause No. 72150

******

# STATE'S BRIEF
******

**HENRY GARZA**
DISTRICT ATTORNEY

**BOB D. ODOM**
ASSISTANT DISTRICT ATTORNEY
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

*Oral Argument Not Requested*

1

# TABLE OF CONTENTS

**ITEM**                                                   **PAGE**

Index of Authorities ……………………………………………………… 3

Statement Regarding Oral Argument ………………………………….. 4

Statement of the Case …………………………………………………… 4

Statement of Facts ……………………………………………………..... 5

Summary of State's Argument …………………………………………. 11

Argument and Authorities ……………………………………………… 11

    Issue on Appeal …………………………………………………... 11
        WAS EVIDENCE SUFFICIENT TO PROVE BEYOND
        A REASONABLE DOUBT THAT THE APPELLANT
        ASSAULTED VICTIM AS ALLEGED IN THE
        INDICTMENT?

    Standard of Review ……………………………………………… 11

    Application and Analysis ………………………………………… 12

Prayer …………………………………………………………………… 17

Certificate of Compliance with Rule 9 ………………………………… 18

Certificate of Service …………………………………………………… 18

# INDEX OF AUTHORITIES

**CASES**                                                                                                           **PAGE**

*Brooks v. State*, 323 S.W.3d 893 ........................................................   12
    (Tx. Cr. App. 2010)

*Hacker v. State*, 389 S.W.3d 860 .......................................................   16
    (Tx. Cr. App. 2013)

*Isassi v. State*, 330 S.W.3d 633 ....................................................... 12, 17
    (Tx. Cr. App. 2010)

*Jackson v. Virginia*, 443 U.S. 307 (1979) ........................................ 11, 12

*Murray v. State*, __S.W.3d__, No. PD-1230-14 .................................   16
    (Tx. Cr. App. April 15, 2015)

*Williams v. State*, 235 S.W.3d 742 ...................................................   12
    (Tx. Cr. App. 2007)

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument.

## STATEMENT OF THE CASE

The Appellant, Antonious Desmond Brinson, was charged by indictment with the offense of assault with bodily injury on family member, having a prior conviction for assault with bodily injury on a family member.  The indictment also included allegations in the second paragraph that the Appellant had been previously convicted of a felony offense for purposes of enhancement of sentence. (CR-4).

The Appellant was tried before a jury in the 264th District Court of Bell County, Texas, Judge Martha J. Trudo presiding.  The jury found the Appellant guilty as charged in the indictment. (CR-85, 87; RR7-144).

Upon the Appellant's election (CR-64), the same jury considered the issue of punishment.  The jury found the enhancement allegation in the indictment to be true and assessed punishment at 13 years in the Texas Department of Criminal Justice Institutional Division and a fine of $1,000.00. (CR-86, 87; RR8-41).

The Appellant gave timely notice of appeal (CR-91) and the trial court certified his right to do so. (CR-78).

## STATEMENT OF FACTS

The Appellant and the State entered into a stipulation, approved by the trial court, that the Appellant had been previously convicted of assault with bodily injury upon a family member as alleged in the indictment. (RR6-5, 6).

On the evening of October 10, 2013, the victim, Javonda Johnson, was at home with her 8 children. (RR6-63, 65). There had been a birthday party that day for one of the children and a number of toys had been left outside in the front yard, including a metal baseball bat. (RR6-64). The Appellant was the father of two of her children and lived with them on a come and go basis and all of the children considered him their stepfather. (RR6-98, 99; RR7-9).

That day both the Appellant and the victim had been drinking heavily (RR6-69, 110, 111; RR7-12, 13), they had argued, and the Appellant left. At about 8:00 p.m., the victim's 13 year old daughter, M.J., heard a knock on the door. She looked out and saw the Appellant and three other men. (RR6-65, 66, 100). She asked for, and received, permission from her mother to open the door. (RR6-66, 67).

Javonda Johnson went outside to talk with the Appellant. (RR6-67, 68). M.J. claimed at trial that her mother then picked up the baseball bat and swung at the Appellant, who caught it in his hand. (RR6-68, 69, 72). When she gave her handwritten statement to the police that night, however, M. J. stated that the Appellant had grabbed the bat, charged at her mother, and hit her with it. (RR6-76, 77).

M.J. testified that both the Appellant and the victim fell to the ground and that he hit her in the face with the bat while she was attempting to get it away from him. (RR6-72). She stated that the Appellant had hit her mother in the head with the bat and that she saw him strike the blow. (RR6-74, 78). She said that the first time he hit her with the bat it was "on purpose" and he simply grabbed the bat and swung it at her mother. (RR6-94).

M.J. conceded that she had spoken with her mother a lot about the case (RR6-92) and that the Appellant had moved back in with the victim and her family after the incident. (RR7-93).

M.J.'s older sister, T. J., heard the knock on the door and looked out to see the Appellant and three of his friends. (RR6-100). She heard the Appellant tell her mother to come outside so that he could ask her some questions. She also heard her mother say that she was not going to walk

out there because there was "a bunch of them and only one of her." (RR6-102).

T.J. left the room for a short time and when she returned she saw M.J. standing in the doorway and heard her mother yelling. T.J. got her younger siblings to sit down and then went to the doorway. (RR6-102, 103). She saw the Appellant and her mother on the ground wrestling with the bat between them. She said that the bat hit her mother in the face and that the Appellant had the bat in his hands and her mother pushed it away. She said the Appellant hit her mother in the face with the bat. (RR6-104, 105).

T.J. called 911 because she could see a visible knot on her mother's forehead and she was bleeding. (RR6-105). See State's Exhibit 4. (RR9).

For the first time at trial, T.J. claimed that she saw her mother grab the bat first and stated that she believed that the Appellant then took it out of her hand. She said both were punching the other after they fell to the ground. (RR6-107, 108).

T.J. wrote out a handwritten statement for the police minutes after the incident. In that statement she said that the Appellant was angry with the victim and that he attacked her with the metal baseball

7

bat. She did not say anything about her mother picking up the bat first. (RR6-113, 114, 130, 131). Like her sister, she had talked about the case with her mother. She also confirmed that the Appellant was living with them again about two weeks after the incident. (RR6-114, 115).

T. J. never saw any injuries on the Appellant but did see the knot on her mother's head. (RR6-132). She called 911 because the Appellant had attacked her mother. (RR6-134).

Javonda Johnson testified that two of her nine children had been fathered by the Appellant and that he had stayed with her the night before the incident. She said that they had been drinking a lot of beer and arguing. (RR7-6, 8, 11, 12). That evening the Appellant had come to the door with three other men. She and the Appellant went outside and started arguing. (RR7-12, 13). He was upset about her going to other people's houses and talking to "somebody". He was probably angry because he thought she was cheating on him. (RR7-15). Javonda is 5'4" tall and weighs 140 pounds. The Appellant is 6'2" tall and weighs 215 pounds. (RR7-16).

At trial Javonda said that she picked up the bat and they were struggling over it and fell to the ground. She said that when she managed to get back up she had a knot on her head. She claimed that

8

she did not remember the Appellant swinging at her and they both had their hands on it during the struggle. (RR7-1&).

She stated that she obviously was hit because she had a softball sized knot on her forehead. (RR7-19). She was pregnant with the Appellant's child at the time. (RR7-40).

Javonda Johnson admitted that she had told the 911 operator that the Appellant had ordered her outside to confirm something he had heard about her and that he had picked up the bat and told her that if she was not truthful he would "kick her ass". She told the operator that he then hit her on the head with the bat. (RR7-72). See 911 recording State's Exhibit 7. (RR9). She also confirmed that she had told the first police officer on the scene that the Appellant had picked up the bat and hit her on the head with it. (RR7-24). In her handwritten statement she stated that the Appellant had accused her of something, put his hands on her and then hit her on the head with the bat. (RR7-24-26).

Javonda also signed a release of obligation stating that she did not wish to pursue charges against the Appellant and included in that document that the Appellant had hit her on the head with the bat. (RR7-27). State's Exhibit 9 (RR9).

9

She and the Appellant made up a couple of days later. (RR7-30). She then gave the Appellant's attorney a non-prosecution statement requesting that the case be dismissed. (RR7-34, 35, 43, 44).

In her failure to cooperate with the prosecution of the Appellant, Javonda Johnson followed an established pattern. Her children had called 911 about ten days earlier when the Appellant had grabbed her around the neck during an argument. She declined to press charges. (RR7-20). Ms. Johnson was the victim in the case resulting in the 2012 conviction for assault on a family member charged in the indictment and stipulated to by the Appellant. In that case, during an argument resulting from his accusations that she was cheating, he punched her and broke her nose. She attempted for decline to prosecute in that case as well. (RR7-61). In 2013 the Appellant had thrown a bowl, cutting her forehead, but again she declined to prosecute. (RR7-60).

Javonda said that she never wants to prosecute the Appellant. (RR7-64). She told Killeen Police Victim's Assistance Officer Lisa Hatfield that they had children together and she did not want to see him go to prison. She testified during the punishment hearing in this case that she never wanted the trial and pled for leniency. (RR8-10, 13).

# SUMMARY OF STATE'S ARGUMENT

When all of the evidence is reviewed in the light most favorable to the verdict and deference is given to the jury's rational inferences from that evidence and its exclusive right to determine the credibility and weight of the evidence and to resolve conflicts in the evidence, it cannot be said that a rational jury could not have found beyond a reasonable doubt that the Appellant committed the offense as alleged in the indictment.

# ARGUMENT AND AUTHORITIES

## *Issue on Appeal*

Was the evidence insufficient to prove beyond a reasonable doubt that the Appellant assaulted the victim as alleged in the indictment?

### *Standard of Review*

Due process of law requires that the State prove, beyond a reasonable doubt, every element of the offense charged in the indictment. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979). In reviewing the sufficiency of the evidence to support the conviction the court must consider all of the evidence in the case in the light most favorable to the verdict in order to determine whether, based upon the evidence and

reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W. 3d 893, 899 (Tx. Cr. App. 2010).

In reviewing the evidence in the light most favorable to the verdict, the court must presume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences from that evidence in a manner that supports the verdict. *Jackson* at 318. The court must consider only whether the fact finder reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tx. Cr. App. 2010).

The weight and credibility of the evidence is solely for the fact finder and the court will not re-evaluate those matters nor substitute its judgment for that of the fact finder. *Isassi* at 638; *Williams v. State*, 235 S.W.3d 742, 750 (Tx. Cr. App. 2007).

### *Application and Analysis*

In this case the pertinent part of the indictment alleged that the Appellant did "….intentionally, knowingly, or recklessly cause bodily injury to Javonda Johnson…by hitting and pushing and striking the said Javonda Johnson with the hands and fists of the defendant and by hitting and striking the said Javonda Johnson in the head and face with a metal

baseball bat....". (CR-4). Those elements were set out in the trial court's charge as well. (CR-69).

The Appellant contends that the evidence was insufficient to prove that he intentionally, knowingly, or recklessly caused bodily injury to Ms. Johnson by hitting her with his fists or a metal bat. (Appellant's Brief at 3). In so arguing he relies upon one side of the conflicting testimony in the case, while totally ignoring the other side. This disregards the exclusive right of the jury to determine the credibility and weight of the evidence was well as the presumption that the jury resolved conflicts in the evidence in favor of its verdict of guilty.

Clearly, credibility became a major issue in the case. Javonda Johnson had a long history of covering for the Appellant after he had assaulted her and her testimony at trial was sometimes in conflict with what she had related to the 911 operator, the police officers, and the victim coordinator. She admittedly told these witnesses that the Appellant made accusations against her and had picked up the baseball bat and charged at her swinging it and striking her in the face. Her daughter, M.J., said that she saw the Appellant swing the bat and strike her mother in the face. Javonda Johnson had a knot on her head the size of a softball.

The victim's statements at the time of the offense, as well as those of her daughters, were completely consistent with the Appellant having attacked her in anger with the baseball bat and having struck her in the face.

It was only at trial that Ms. Johnson and her daughters suddenly claimed that she had picked up the bat and that she had been hit is some undefined way after she and the Appellant had fallen to the ground to struggle over the bat. Even then, however, M.J. still stated that the Appellant clearly hit her mother with the bat "on purpose" and that he had grabbed the bat and swung it at her. (RR6-94).

The jury heard that Javonda Johnson was completely opposed to prosecuting the Appellant and signed a request to that effect even while stating that he had attacked her with the bat. It also heard the she had offered a non-prosecution statement to try to persuade the State not to pursue the case. She and the Appellant had reconciled a couple of days after the assault and moved back in together. M.J. and T.J. had lived in the house with both their mother and the Appellant. Their mother had talked to them about the case. Their testimony had changed by the time of trial.

Furthermore, the Appellant had physically assaulted Javonda Johnson three times before and each time she had attempted to drop the charges to protect the father of two of her nine children and had been successful twice.

The new version of the offense by the time of trial obviously created a conflict in the evidence, as to who first picked up the bat and whether or not the victim was attacked directly by the Appellant with the bat or was injured by the Appellant with the bat during a struggle. Nevertheless, there was evidence before the jury that the Appellant had started an argument with the victim, ordered her to come outside, picked up a metal baseball bat, and hit her in the face with it.

It must be presumed that the jury weighed the credibility of all of this evidence and then resolved the conflicts in the way that support the verdict of guilty. It also must be presumed that the jury drew all of the rational inferences from that evidence necessary to support its verdict. When all of the evidence is considered there was sufficient evidence for a rational jury to find beyond a reasonable doubt that the Appellant intentionally, knowingly, or recklessly caused bodily injury to Javonda Johnson by striking her with his hands or a metal baseball bat.

The Appellant simply relies upon that part of the evidence in which the victim and her daughters sought to protect him, while ignoring all of the rest of the evidence supporting the verdict. However, the appellate courts are not permitted to use such a "divide and conquer" strategy in evaluating the sufficiency of evidence. Instead the court must consider the cumulative force of *all* of the evidence and where the record supports conflicting inferences, must presume that the jury resolved those conflicts in favor of the verdict, and then must defer to that determination. *Murray v. State*, __S.W.3d__. No. PD-1230-14 (Tx. Cr. App. April 15, 2015), citing *Hacker v. State*, 389 S.W.3d 860, 873 (Tx. Cr. App. 2013).

In this case there was evidence that the Appellant picked up the baseball bat and struck Ms. Johnson in the face "on purpose" from which the jury could reasonably find that he struck her with the bat intentionally, knowingly, or recklessly. The Appellant does not contend that she did not suffer bodily injury from that blow or challenge the proof of the relationship between them as alleged in the indictment. The fact that there is conflicting testimony that the blow may have been somehow struck during the course of a struggle for the bat and that the victim first picked it up does not mean that the jury could not have

16

rationally and reasonably inferred that the blow was struck with the requisite culpable mental state. The jury weighed the credibility of the evidence and reconciled the conflicts in the evidence and presumably did so in favor of the verdict it rendered. That determination must be given great deference. The role of the appellate court is restricted to guarding against the rare occurrence when a fact finder does not act rationally in its determination. *Isassi* at 638. This is not such an occurrence.

## PRAYER

The State of Texas respectfully prays that the judgment of conviction herein be, in all things, be affirmed.

Respectfully Submitted,

HENRY GARZA
District Attorney

/s/ *Bob D. Odom*

BOB D. ODOM
Assistant District Attorney
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

# CERTIFICATE OF COMPLIANCE WITH RULE 9

This is to certify that the State's Brief is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 2,736 words.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this brief has been served upon, Tim Copeland, Counsel for Appellant, by electronic transfer via Email, addressed to him at ecopeland63@yahoo.com on this 17th day of April, 2015.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney